The last case on the calendar is En Re. Ladder III Corp. Good afternoon, Your Honors. May it please the Court. My name is Wayne Greenwald. I represent the appellant, OTR Media Group. The law court erred in determining that Bankruptcy Code Section 349B.3 does not prevent the enforcement of a stipulation entered in a bankruptcy case that is later dismissed and that where the order dismissing the case does not preserve any of the rights that the debtor obtained during the case. This Court, in Crawford v. Franklin credit, already adopted the plain meaning and congressional intent of Section 349B.3. The purpose of Section 349B.3 is to undo the bankruptcy case as far as practicable and to restore all property rights to the position which they were found at the commencement of the case. Can I just stop and ask a question there? Please. I understand that provision says that the dismissal of the bankruptcy case revests the property of the estate in the entity in which such property was vested immediately before the bankruptcy began. So it would help me. So what property interest did OTR have before the bankruptcy began? Perfect. Your Honor, on August 2, 2010, Ladder 3 sued OTR Media in state court. OTR Media had defenses. OTR Media had counterclaims. OTR Media had the ability to pursue these and it did not have an adjudicated obligation to make any payments to Ladder 3. Two days later, Ladder 3 filed for Chapter 11. In the course of its bankruptcy case, Ladder 3 removed the state court case to the bankruptcy court and litigation continued. So is that saying that OTR not being obligated to pay, not being under a legal obligation to pay someone at that moment, was a property right? I would say it's a property right. My memorandum of law discusses cases that the obligation — let me rephrase this — that not having an obligation to pay or a right not to pay is a right and a property right. That the stipulation created an obligation to pay, waived defenses, gave releases, and all of these — all of these conducts involved the transfer of property rights and they were transfers. The case was dismissed on Ladder 3's motion. The order dismissing the case did not have any provision preserving those rights under the agreement. Therefore, by the action of the dismissal, the effect of the stipulation was negated. Those rights that were granted to the debtor, Ladder 3, in the bankruptcy case could no longer be enforced. Could I just ask a practical question about your position here? It also follows, if we accept your description of these things, that Ladder 3, on that day before they filed the property right in the form of its claim against you. Of course. Right. And you're saying — and that reverts to Ladder 3 after the bankruptcy case is over. Without question. And if the statute of limitations has run somewhere in between when that original action was filed and now, when, under your view, they would have to crank up their litigation all over again, they would no longer be able to bring that because of the statute of limitations or they would be restored to the position they were in before? In this instance, I would say that the Ladder 3's bankruptcy case told the statute of limitations because under 108, there's a tolling of two — under 108 of the bankruptcy code, there is a tolling of two bankruptcy cases that is told to begin with. Then afterwards, OTR had its own bankruptcy case in Chapter 11, which was later dismissed. In that instance, the statute of limitations was told to Ladder 3. Absent those bankruptcy cases, I would say that the statute of limitations would have continued. Here, as a result of the two bankruptcy cases, 108 and OTR's bankruptcy case, I do not think we wind up with the statute of limitations issue. Where does it go? Where does this case go? It goes back to Brooklyn? It goes back to the Eastern District? The adversary proceeding? The adversary proceeding began in a second bankruptcy case that was commenced after the bankruptcy in 2015 — excuse me, 2014, and that was in the Eastern District of New York. That case was closed. For some reason, the trustee did not pursue this claim. The case was closed. Then in 2015, the case was reopened, and the trustee in bankruptcy commenced actions against OTR based upon Goods Sold and Delivered, which is a state law claim, and then they revert the obligation under the stipulation. There was a motion to the trustee move for summary judgment, and OTR cross-moved for summary judgment on the issue. I suppose there hadn't been a stipulation of settlement in that original adversary action, but the thing went to conclusion. There was a trial of the original adversary proceeding, and you folks were found liable for X dollars. Are you saying that would be enough? Your Honor, that situation was actually once considered by the late bankruptcy judge Marvin Holland in a case called In Re Acolyte Electronics. We have not cited it, simply because that the case itself did not go to this. However, in that case, he said that under the circumstances, that judgment would then have to be vacated. Everything that happens in the bankruptcy court becomes a nullity if there is a dismissal without discharge. No, without an order preserving what occurred in that bankruptcy case. Here, we're talking about dismissal, not discharge. Here, if there is a dismissal and the order does not preserve it, then everything occurs as a nullity. However, let's put another contrast to this. If the Chapter 11 case went to confirmation, Chapter 11, plan of reorganization was submitted and approved, then we would be bound by the stipulation, because the law, and actually one of the cases cited in Ray Ramirez, shows that, and also in DeWayne DePue, which is also discussed, says that if you confirm a plan, then whatever is in there remains, even if there is a dismissal afterwards. Sorry, I was imprecise. I'm not a bankruptcy expert. If there is a discharge or reorganization plan confirmed and the bankruptcy has reached a conclusion, then these adversarial proceedings would have full effect. If there was, yes. But if there's a dismissal of the bankruptcy case without completion, then all of these adversary cases that have been tried become nullities, and no one knows whether a judgment that results from an adversary proceeding in bankruptcy is binding or not until we know the outcome of the bankruptcy proceeding. I would say yes, except for one thing. When there is a motion to dismiss a bankruptcy case, it is either made by the Office of the United States Trustee, in this case it was the debtor, or it could be made in a party of an interest. That motion can ask for orders and decisions that were made in the case to be sustained and retained and remain enforceable. That is the choice of the parties making the motion, the debtor responding, the court, and that you have an opportunity there to determine whether or not cause has been demonstrated for retaining that decision. Here, the motion did not include that request. If it had, OTR would have had the opportunity to argue that the stipulation should not be sustained. Why? Because we've given up rights, and there is no benefit to creditors here. As a matter of fact, one of the concerns that we have and we mentioned is that the debtor did not complete the case, and therefore it's not entitled to the benefits. It got a windfall, because after the bankruptcy case, and I should say between bankruptcy cases, forgive me, between bankruptcy cases, Ladder 3 made a demand on OTR for the payment of the stipulation while it was not in bankruptcy, so that there would be no benefit to the debtor, because there's no longer a debtor, the debtor's estate, because there's no longer a bankruptcy estate, and the debtor's creditors, because there is no bankruptcy plan, by OTR having made any payment. So they would be receiving the windfall, and we, of course, discussed this in the memorandum of law, that this should not be permitted. I hope I answered your question. So we'll hear from your adversary. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Dov Madenitz. I am an attorney with Guttman Weiss. We represent the plaintiff at Pauley, Robert Musso is the Chapter 7 trustee of the estate of Ladder 3 Corp. The Court should sustain the lower court, the District Court, sitting in its appellate capacity, which in turn sustained the award of summary judgment granted by the Chief Judge of the Bankruptcy Court, for substantially the same reasons that the District Court set forth in its even more comprehensive decision. Specifically, a settlement that is approved by a bankruptcy court under 9019A has immediate effect, dispositively disposes of the controversy between the parties, has race judicata preclusive effect, and is not militated by 349 of the Bankruptcy Code in any way. Secondly, and as the Court has already inquired of counsel, it is clear in this case that the entry into the stipulation of settlement in this case did not serve to transfer any property of any kind under any circumstances to the estate. And finally, the absolutist reading that appellant wants to take in this case, where any property of any kind under any circumstances leads to absolutely untenable results that cannot be sustained. Turning to the first point, the fact is this case is resolved by this Court's decision in ASARCO. In ASARCO, Judge Lynch, you wrote that the 9019 approved stipulation of settlement was effective once approved and was not conditioned on the confirmation of a reorganization plan. Judge Lynch, your words could not have been more clear. A reorganization plan is not necessary for the immediate binding effect of a 9019 stipulation of settlement, which has the imprimatur of the Bankruptcy Court. And ASARCO will govern this case. Beyond the ASARCO decision, this Court in Aidsburg has also made it clear that a stipulation of settlement under 9019 is deemed a final order for the purposes of appealability. And counsel for appellant spends some time in his reply brief explaining why final order is a term of art that has to do with the specifics of the context of what is and what is not appealable paper. But the Aidsburg Court made it very clear that the necessity of finality in bankruptcy orders is an extremely compelling consideration and even serves to outweigh the competing federal interest of avoiding piecemeal appellate practice. But what that ties into is what the Fifth Circuit said in Adamus v. Itek. In that case, the Fifth Circuit again agreed with the Second Circuit that a 9019 stipulation of settlement was a final order and went a little bit further and referred to it specifically as an order that has preclusive race judicata effect and bars further litigation by the parties. Now if a 9019 stipulation of settlement has race judicata preclusive effect, that is the definitional antithesis of the position that counsel for appellant just took before the court. I believe it was Judge Lynch who asked where would this go if the court were to reverse? And the answer that was given is yes, this would go back to New York County Supreme Court, I'm sorry, Kings County Supreme Court. We'd go to 360 Adams Street. We would start the trial. Everyone would bring their claims and we'd go forward to a trial. That is the counterpositive to a 9019 order being race judicata. It doesn't get more clear than that. This were not a stipulation but had a judgment that resulted from a trial. We'd be saying that trial was a nullity. Its results don't count. They don't bind anybody. We have to go back and start over again and try the case all over again. There may be some distinction, Mr. Greenwald says in his brief, well we made a decision to settle based on the fact that you were in bankruptcy or whatever, but the same rule would have to apply. The rule he wants us to adopt would have to apply in the case of a case that went to judgment in an adversary proceeding as well. I brought up that very scenario in my moving papers. There's no case out there that I could find that says if you go to a jury trial in bankruptcy court adversary proceeding, that's race judicata. You can't relitigate that. The reason you're not going to find a case that says it is because it is too obvious a proposition to have ever even come in front of a court. Now, that brings us to the trial court case of Ramirez, which I think is also very important and because that's the one case in which the court directly looks at the interplay between 349 and a stipulation entered into in a bankruptcy court. In that respect, I want to correct what I think was something of a misunderstanding that was set forth during Mr. Greenwald's argument. A bankruptcy case has not come to its conclusion where there is a dismissal even if there is a confirmed plan. You can have a confirmed Chapter 13 plan, a confirmed Chapter 11 plan. That do not end up terminating pursuant to the terms of the plan. The debtor can default on their obligations under the plan and then the case is discharged. You didn't complete the plan. So I believe that was a little bit of a misconception that was set forth. And what's important about U.S. v. Ramirez from the District Court in Texas is that the court treats this Chapter 11 plan just as it would treat every other contract in state court or in federal court using regular rules of contractual interpretation, regular rules of contractual remedies to which the United States wanted rescission of the contract because of its breach. The court didn't treat it as a sack or sank Chapter 11 plan per se. The court said, well, there was a discharge, but the discharge doesn't do anything to militate against contracts that were entered into during the course of the adversarial proceeding. And we're just going to treat it like a regular contract. And in that respect, the confirmed Chapter 11 plan is no different than the confirmed stipulation of settlement in that it is a contract between the two parties, which is not in any way harmed by the dismissal of the action. Now, could you help me a little bit with, I've noticed this for years, whenever U.S. asks a question, counsel seems to have to look around because the amplification system means you're not hearing my voice from this side of the room. So I'm sorry for the awkwardness of it. Could you help me with the language of 349B3, that in the absence, a dismissal of a case other than under Section 742, in that case, there is a dismissal of a case the order revests the property of the estate in the entity in which such property was vested immediately before the commencement of the bankruptcy. So some of this is sort of obvious to me what the effect of that would be, that at the commencement of the bankruptcy proceeding, the property of the debtor becomes the property of the estate, and the trustee handles it all. And so at the end, if the bankruptcy is dismissed, all that stuff that came from the debtor goes back to the debtor. But the statute doesn't say the property of the estate goes back to the debtor. It says it goes back to the entity in which such property was vested. Can you give me an example of what kind of property of the estate, as of the moment when the bankruptcy is dismissed, would revert to someone other than the debtor? You know, what is that, what is that language supposed to accomplish? So I think that it is instructive to look at some of the other provisions under the statute with regard to avoided transfers that get clawed back, and other sorts of proceedings that are undone. I got it. Something like that. If there was something that was clawed back, so it wasn't the property of the debtor at the beginning of the bankruptcy, it was the property of somebody else, the transaction is avoided, it becomes part of the estate, but now there's a dismissal, it goes back to that party. You know, interestingly, there are some cases that I looked at in drafting this brief which have not made it in front of the Court, and it's not on the record, but I believe that there are some cases that stand for the proposition that certain payments made by others into the bankruptcy estate that are supposed to be paid out to creditors, for instance, the debtor should not get the benefit of that and recapture it, but instead it would go back to wherever it came from. And what Your Honor is asking really dovetails into the final section of my argument, which concerns what's the real meaning of 349? It seems to have this very expansive language that totally absolutist reading cannot be sustained because, of course, that would mean, you know, one of the examples that I gave is if there's a debtor landlord and the debtor landlord's lease is assumed by the trustee during the course of the bankruptcy and the tenant is paying rents into the bankruptcy estate based on that assumed lease, well, the tenant's going to come back and say this was money that was mine before the bankruptcy, I paid it in rent during the bankruptcy, give me my money back. And in fact, in this case, $12,500 was paid toward the bankruptcy estate in the settlement funds, and you'd think they would come back and say that was ours beforehand, we paid it into the bankruptcy estate, give that back to us. And what I think is important, and what I think is important for this Court to focus on in ruling on this case, because there is a little bit of unclarity because of this ambiguous language, and I think the Court may help the understanding of 349 in its decision on this case, would be to make it clear that when we talk about revesting of money, we're talking about money or property that was vested in the estate because of the particular rules of substantive bankruptcy law. That is to say, if there is an avoidance under substantive bankruptcy law, someone lost their money because of the rules of bankruptcy law, that money all goes back. But where money is exchanged between some party and the debtor because of regular civil procedure or because of regular contractual relations, that's not money that gets revested. That's your tenant example, for example. Yes, Your Honor. And in this case, though, it would seem, though, that the tenant example does create this ambiguity in the sense that the tenant had cash in his pocket before the bankruptcy proceeding, paid it to the estate, and at least it fits the literal language. In a funny way here, Mr. Greenwald's claim might be better in that sense to the $12,500 that they did pay, at least depending on when they paid it, as distinct from the judgment that is the property of the estate at the end under this stipulation is a future obligation. That's not property that was vested in somebody before the bankruptcy. That's something that didn't exist until the adversary proceedings result created it. So in a perverse way, my outlandish hypothetical tenant case would be in a better position than appellant here. And I want to point out that counsel keeps over and over citing cases for the proposition that 349 is supposed to undo the bankruptcy case and put the parties back in the position they started out. And one of the big cases he cites is In re Dubois from the Middle District of Alabama. And interestingly, it's not unpacked completely. But the court in that case actually struggled with the very same question that we're presented with here today, where the court in that case says that the application of 349 is admittedly awkward in Chapter 13 cases where property of the state includes the debtor's post-petition wages. This didn't strike me until yesterday. But, you know, the court didn't unpack it, but what they mean is this Chapter 13 debtor is getting paid by his boss, that becomes money of the estate. Are we to think that he has to give his boss all his salary back? Surely that cannot be the resolution to this case. I will not, as the last argument before the Memorial Day weekend, re-eradicate that points that I was going to make about whether there was actual property transfer. I think it's covered in my brief, and it sounds like, from Your Honor's questions, that that point is well taken. So unless there are other questions, I will rest on my papers. Thank you, Your Honors. Number one, the analogy or the discussion we heard about Chapter 13, the reason the money got paid into the estate is because there is an order in the Chapter 13 case where the debtor's money is paid into the estate. But it's the debtor's money that's coming from the boss. If the case is dismissed, the money would go back to the debtor, not to their boss. Your Honor asked a question about— The question of the wages that are paid are the property of the estate during the bankruptcy. But the question is, who does it go back to? Yes. In this instance— It goes back to where it was vested before the commencement of the case. Right, but it was vested in the debtor, the Chapter 13 debtor. That's why the debtor's boss made the payment. Because it's the debtor's plan of reorganization— Because the debtor claims that these wages are owed to me. Right. And they're owed to me from the beginning, just as Ladder 3 has claimed that there was a debt owed to it. Actually, no. The debtor is saying they're owed to me during the course of the bankruptcy case, not just at the beginning. During the Chapter 13 bankruptcy case, I'm continuing to work, and therefore my wages, as opposed to my getting them and paying them to the trustee, I'm having my boss paying it directly. But let me ask you to apply the question I was asking your friend here about the literal language of subsection 3. You've been telling us that you had property before the bankruptcy, before the adversary proceeding, in the form of various claims and defenses. But it doesn't—the statute here isn't talking about, in the first instance, claim—who the property belonged to before. The first thing it says, it revests the property of the estate in the entity in which such property was vested. So what is the property of the estate that's going to revest? I can answer that. Mr. Bednitz was not able to when Your Honor asked the question. Section 541 of the Bankruptcy Code, subsection A7, includes any interest in property that the estate acquires after the commencement of the case. In this instance, after the case commenced, Ladder 3's estate received a release from OTR, it received discontinuances from OTR, it received an obligation to make a payment from OTR, it received OTR waiving defenses. And under state and bankruptcy law, those are viewed as property, and those waivers and those grants are considered transfers. So, OTR transferred these interests in property to the debtor's estate, and it became part of the debtor's estate by action of Bankruptcy Code, Section 541A7. So when the case was dismissed, it went back to OTR. What's the it? Because you said waivers and judgments and obligations, those didn't exist before. Oh, yes, they did. Because before the case began, Ladder 3 sued OTR, and OTR had counterclaims as well. OTR had rights against Ladder 3, which OTR waived. Those existed prior to the bankruptcy case. Those were all related to the transaction of business that OTR and Ladder 3 did pre-petition. So those were property interests that existed prior to the filing of the bankruptcy case. Now, interestingly enough, if we go back to Crawford, How is the settlement agreement? The settlement agreement is its own thing. It's something that happened here and creates new rights that may derive from other rights. I'm trying to understand why none of that existed. You could have made a settlement agreement that just said you're going to pay whatever, and then it's done. That obligation is a fresh obligation that arises in this bankruptcy. Well, if there was no bankruptcy, if there was no bankruptcy, and the action continued in state court, and by the way, if this course reverses as it should, this doesn't go back to state court, this goes back to the bankruptcy court, and then if the bankruptcy court lacks jurisdiction, it'll go to the district court, but it's not going back to state court. So Mr. Medinetz was incorrect on his statement there. But responding to your question, I apologize for the diversion. I'll also say I lost track. I apologize. You're talking about revesting the property of the estate, so what... Okay, we were talking about what would... If this bankruptcy case never occurred, you would have the litigation continue in state court, and OTR would do just as it did when it was removed. It would assert its counterclaims. And maybe at the end they would win, or they would lose, or it would be settled. Correct. But in the course of that action... And that's exactly what happened during the bankruptcy proceedings. In the course of that action, you have each side asserting rights, which are property rights, each side asserting defenses, which are property rights, each side asserting causes of action, which are property rights, which existed for them prior to the filing of the bankruptcy case. Those rights then are extinguished or merged into a judgment, or perhaps into a settlement agreement, which then gets, in this instance, approved by a court. And now there's a new obligation, which is the obligation to comply with the judgment, which is res judicata. There is no judgment. There is a stipulation, which is a contract, subject to the bankruptcy code. And the bankruptcy code abrogates and rejects contracts as a matter of course, all the time. We list at least ten sections of the bankruptcy code that abrogate contracts. Section 365, 502. They all abrogate contracts. And Section 549 is simply saying, a contract that is entered in a bankruptcy case is no different than a contract entered before the bankruptcy case. If we look at Crawford for a section, which is actually useful... You're saying that every settlement in a court is just a contract. Well, the stipulation... It's law that a stipulation is subject to contract law. Mr. Magnus agrees. Prior decisions of this court agree. The district court agree. A stipulation is a contract subject to ordinary contract law. And what has happened is the elevation of a contract over the bankruptcy code. And a judgment that went to trial. We've talked about this before. Nothing went to trial. But if it did, you're saying the same outcome would result, right? If there had been an adversary proceeding that ended in a trial with a judgment that resulted in the exact same outcome, you're saying this provision, 349, leads you to the same place, right? I'm not prepared to say that. Why not? What's the distinction? The distinction is one is a contract which was approved by the bankruptcy court. That's what 9019 does. It says, debtor, you may enter into this contract. That's all it does. It doesn't mandate you do anything. It just says it is in the best interest of the debtors, creditors, and estate that you enter into this settlement. That's what happens. And unlike an action in an adversary proceeding where there's an adjudication, I can see where there's a difference. But here what you have is a contract, a stipulation of settlement where the bankruptcy proceeding is a great influence on the decision to do the stipulation as we discussed in our brief and I'm grateful you noted it. Litigating in bankruptcy court is different than litigating in state court as Breitbart Energy discusses. Nobody in their right mind is going to go do this all the way because you're going to be winning bankruptcy dollars. If you as a creditor proceed and you win, you get bankruptcy dollars which are percentages on the dollar. In contrast, if the debtor wins the debtor gets full dollars. So the thinking is much, much different. The considerations are much different. So if the case is terminated if the debtor decides that it is going to discontinue the bankruptcy case why should it be allowed a windfall? And as we discussed in our papers if you do not, and we have authorities to it if you dismiss your own whether it's a judgment or it's a settlement. I don't think so. And I'll explain why. If you have gone through the litigation that has resulted in a judgment you have made the decision that this is where I'm doing my fight here. I'm deciding that you know I'm going to assert my claim I'm going to do what's necessary I'm going to fight it out here. I'm not making a decision to fold. If you're doing a stipulation of settlement you're saying this fight is not worth it. If I was in state court my thinking would be different. However if I litigated all the way through in bankruptcy court I can see where I'm stuck. That one is a contract, the stipulation is a contract the other is litigation you've made the decision to not settle you have rejected the considerations that Breitbart Energy discusses nobody in their right mind would do this all the way but you've decided to do it all the way and therefore you are going to be bound by that. So I see there's a distinction between the two. And I appreciate and I will go as far as saying I had mentioned In re Acolyte Energy which I did not cite because Judge Holland's discussion was thoroughly dicta. He had discussed exactly what you would describe. What happens if it goes all the way? You would be undoing that as a matter of fact any money paid would go back to the plaintiff. And he said that's ridiculous. Mind you this was completely dicta. This was actually discussing I'll say a predecessor of Stern versus Marshall. But we're not talking about that here. And I can see the difference because in one instance you have decided to accept the warnings of Breitbart Energy. You're folding. You're saying I'm not going forward. But if you decide that you are going to litigate you should be bound. Thank you for your argument. Thank you very much. Thank you both. We will take the matter under advisement. And that is the last argued case on the calendar so I'll ask the clerk to adjourn.